## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2018, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Heath Bradley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 16, 2018<br><br>Court of Appeals Case No.<br>49A02-1709-CR-2170<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Christina Klineman, Judge<br><br>Trial Court Cause No.<br>49G08-1701-CM-1652 |

**Barnes, Judge.**

# Case Summary

Heath Bradley appeals his conviction for Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent ("ACE") of 0.15 or more. We affirm.

# Issue

Bradley raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction.

# Facts

On January 11, 2017, Officer Nicholas Ragsdell of the Indianapolis Metropolitan Police Department was dispatched to Westfield Boulevard for a report of a "potential stolen vehicle." Tr. Vol. II p. 8. When Officer Ragsdell arrived in the area shortly after the first dispatch, he "received a second call from dispatch stating that the subject had returned to the residence and now the vehicle was park[ed] in the driveway." *Id.* at 10. Officer Ragsdell and other officers went to the residence, and Bradley's mother asked the officers to come inside. She took them to a bedroom where they found Bradley on the bed wearing his coat. Bradley sat up and told the officers:

> He began to tell me his story of he had just recently moved back to the area. I believe he was staying out of State. He moved in with his mother. His mother had just recently purchased the vehicle is what he told me for his use to look for a job and that she nags him all the time and just basically that he had just had it and he just needed to go for a drive. He didn't really go

anywhere. He just circled the block and he didn't steal the car. He just took it for a spin around the block.

*Id.* at 11. As Bradley was talking, Officer Ragsdell noticed "signs of impairment." *Id.* at 12. The officer noted:

> When [Bradley] stood up from the bed, his balance wasn't steady. He had to have his hand on the bed to balance himself as he spoke to us and lean against the door frame and as we continued to speak. Throughout his conversation, I could definitely smell the odor of alcoholic beverage coming off his breath. He slurred some of his words. Not to the point that I felt like I couldn't understand him, but definitely a little impaired.

*Id.* Officer Ragsdell requested a DUI unit to assist, and Officer Craig Wildauer arrived on the scene. Officer Wildauer noticed that Bradley had a strong odor of alcoholic beverages on his person, that his speech was slurred, and that his eyes were glassy and bloodshot. Bradley told Officer Wildauer that he had been drinking vodka, that he had driven the vehicle, and that he had not consumed any alcohol after he got home. Bradley did not cooperate with performing the field sobriety tests and was sarcastic, claiming that he would "beat this." *Id.* at 20. Bradley refused to submit to a chemical test, and Officer Wildauer obtained a search warrant for Bradley's blood, which revealed an ACE of 0.324. The keys to the vehicle were found in Bradley's coat pocket when he was arrested.

[4] The State charged Bradley with Class A misdemeanor conversion, Class C misdemeanor operating a vehicle while intoxicated, and Class A misdemeanor

operating a vehicle while intoxicated with an ACE of 0.15 or more. During Bradley's bench trial, the State sought to admit the recording of the 911 call from Bradley's mother. Bradley objected because his mother had been "excluded from the Trial."[1] *Id.* at 6. The trial court excluded the recording of the 911 call. When Officer Ragsdell testified, Bradley objected to the officer's testimony that "[w]e were dispatched on a possible stolen vehicle. The caller knew the person who she thought stole the car and believed that he was intoxicated." *Id.* at 9. The trial court allowed the testimony "to show why the officer went to the call as not substantive." *Id.* Bradley did not object to Officer Ragsdell's testimony regarding the second call from dispatch.

[5] The trial court dismissed the conversion charge. The trial court found Bradley guilty of the remaining charges but only imposed a conviction and sentence for Class A misdemeanor operating a vehicle while intoxicated with an ACE of .15 or more. Bradley now appeals.

## Analysis

[6] Bradley argues that the evidence is insufficient to sustain his conviction. In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* A conviction

---

[1] The record does not indicate the reason for her exclusion.

will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "'It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.'" *Id.* at 1066-67 (quoting *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005)).

[7] Indiana Code Section 9-30-5-1(b) provides: "A person who operates a vehicle with an alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath; commits a Class A misdemeanor."

[8] Bradley first argues that the evidence is insufficient to show that he operated the vehicle. Several factors may be examined to determine whether a defendant has "operated" a vehicle: "(1) the location of the vehicle when it is discovered; (2) whether the car was moving when discovered; (3) any additional evidence indicating that the defendant was observed operating the vehicle before he or she was discovered; and (4) the position of the automatic transmission." *Crawley v. State*, 920 N.E.2d 808, 812 (Ind. Ct. App. 2010), *trans. denied*. In addition to these four factors, "[a]ny evidence that leads to a reasonable inference should be considered." *Id.*

[9] Bradley argues that none of the officers saw him operating the vehicle and that, pursuant to the corpus delicti rule, his admission, without more, is insufficient to sustain his conviction. The corpus delicti rule provides:

> In Indiana, a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. *Green v. State*, 159 Ind. App. 68, 304 N.E.2d 845, 848 (1973). Rather, independent proof of the corpus delicti is required before the defendant may be convicted upon a nonjudicial confession. *Id.* Proof of the corpus delicti means "proof that the specific crime charged has actually been committed by someone." *Walker v. State*, 249 Ind. 551, 233 N.E.2d 483, 488 (1968). Thus, admission of a confession requires some independent evidence of commission of the crime charged. *Workman v. State*, 716 N.E.2d 445, 447 (Ind. 1999). The independent evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that the crime charged was committed. *Malinski v. State*, 794 N.E.2d 1071, 1086 (Ind. 2003). This inference may be created by circumstantial evidence. *Id.*

> The purpose of the corpus delicti rule is to prevent the admission of a confession to a crime which never occurred. *Hurt v. State*, 570 N.E.2d 16, 19 (Ind. 1991). The State is not required to prove the corpus delicti by independent evidence prior to the admission of a confession, as long as the totality of independent evidence presented at trial establishes the corpus delicti. *McManus v. State*, 541 N.E.2d 538, 539-40 (Ind. 1989).

*Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017).

[10] Bradley argues that, without his confession, there was no independent evidence that he operated the vehicle. The State contends that the "officers were able to corroborate the report of the stolen vehicle by an intoxicated driver as soon as

they reached Defendant's home and spoke to his mother." Appellee's Br. p. 17. Bradley responds that his mother was excluded as a witness, the 911 call was not admitted, and Officer Ragsdell's testimony regarding the dispatch call was not admitted as substantive evidence.

[11]     Much of the evidence regarding Bradley driving his mother's vehicle was excluded, including the recording of the 911 call. However, Officer Ragsdell did testify, without objection, that he was dispatched to the residence for a report of a "potential stolen vehicle." Tr. Vol. II p. 8. He also testified, without objection that, shortly after the first dispatch, he "received a second call from dispatch stating that the subject had returned to the residence and now the vehicle was park[ed] in the driveway." *Id.* at 10. When they arrived at the residence, the vehicle in question was parked in the driveway. Bradley's mother then led the officers to Bradley, who was on a bed in a bedroom still wearing his coat. The keys to the vehicle were in Bradley's coat pocket. This circumstantial evidence provided an inference that the crime charged was committed. Consequently, the corpus delicti rule does not apply here, and Bradley's confession is admissible. Bradley told Officer Ragsdell that "he just needed to go for a drive" and that he "just circled the block." *Id.* at 11. He also told Officer Wildauer that he had driven the vehicle. The State presented sufficient evidence to show that Bradley operated the vehicle. *See, e.g., Weida v. State*, 693 N.E.2d 598, 600 (Ind. Ct. App. 1998) (holding that corpus delicti was established where the defendant and another person were the only people near the vehicle that was in a ditch), *trans. denied*.

[12] Next, Bradley contends that there is no evidence as to whether he was intoxicated at the time he drove the vehicle. In support of this argument, he relies on *Flanangan v. State*, 832 N.E.2d 1139 (Ind. Ct. App. 2005). There, an officer stopped to help with a disabled vehicle. The officer did not know how long the vehicle had been sitting on the side of the roadway. The officer found the defendant, who was intoxicated. We concluded that the evidence was insufficient to sustain the defendant's conviction for operating while intoxicated because there was no evidence presented as to when the defendant consumed the alcohol. "This is so because it could be that Flanagan consumed beer after the vehicle broke down, and when the beers were all gone, the men decided to venture to a nearby store to call for assistance." *Flanangan*, 832 N.E.2d at 1141. Here, though, only a few minutes had passed between the time Officer Ragsdell was dispatched to the residence and the time that he found Bradley to be highly intoxicated.

[13] Additionally, the State directs our attention to Indiana Code Section 9-30-6-15(b), which provides:

> If, in a prosecution for an offense under IC 9-30-5, evidence establishes that:

> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

> (2) the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:

> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>
> (B) two hundred ten (210) liters of the person's breath;
>
> the trier of fact shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

The time period allowed for testing under Indiana Code Section 9-30-6-2 is three hours. Although this statute specifically refers to an ACE of at least 0.08, our court has held that the same concept applies in situations concerning higher blood alcohol levels. *Jackson v. State*, 67 N.E.3d 1166, 1170 (Ind. Ct. App. 2017). In *Jarrell v. State*, 852 N.E.2d 1022, 1029 (Ind. Ct. App. 2006), we held that "a timely BAC test result permits a presumption that the defendant had an identical BAC at the time he or she was driving." Specifically, in *Jarrell*, we held that the defendant's timely test result of 0.16 BAC allowed for a presumption that he had a. 16 BAC when he was driving. *Jarrell*, 852 N.E.2d at 1029.

[14] Here, Officer Ragsdell was dispatched at 11:42 p.m., and the chemical blood test was administered at 1:27 a.m., within the three-hour time frame. Bradley's ACE was 0.324, much more than 0.15. Consequently, a presumption existed that Bradley had an ACE of at least 0.15 at the time he operated the vehicle. We conclude that the evidence is sufficient to sustain Bradley's conviction for

Class A misdemeanor operating a vehicle while intoxicated with an ACE of 0.15 or more.

## Conclusion

[15] The evidence is sufficient to sustain Bradley's conviction for Class A misdemeanor operating a vehicle while intoxicated with an ACE of 0.15 or more. We affirm.

[16] Affirmed.

Vaidik, C.J., and Pyle, J., concur.