## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 18 2020, 11:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Glenn Connors, *Appellant-Defendant,* | May 18, 2020 |
| v. | Court of Appeals Case No. 19A-CR-2846 |
| | Appeal from the St. Joseph Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Julie P. Verheye, Magistrate |
| | Trial Court Cause No. 71D05-1908-CM-2950 |

**Kirsch, Judge.**

Steven Glenn Connors ("Connors") appeals his conviction for operating a vehicle while intoxicated[1] as a Class C misdemeanor. Connors raises one issue, which we revise and restate as whether the evidence was sufficient to support his conviction.

We affirm.

## Facts and Procedural History

On August 16, 2019, Officer Anthony VanOverberghe ("Officer VanOverberghe") responded to an accident at "a little after four o'clock" in the afternoon at the intersection of Huron Street and Crumstown Trail in St. Joseph County involving Connors and another driver. *Tr. Vol. II* at 19-20, 27. Officer VanOverberghe responded to the call "probably within 5, 10 minutes" of receiving the call, although he could not recall the precise time that he had received the call. *Id.* at 27. When he arrived at the scene of the accident, medics were with the other driver. *Id.* at 20. Officer VanOverberghe was told there were no serious injuries involving the other driver, and he proceeded to Connors's vehicle. *Id.* Connors was leaning against his vehicle, and Officer VanOverberghe could "smell the odor of alcohol" on Connors. *Id.* at 21. Connors complied with Officer VanOverberghe's request to step away from his vehicle, and Officer VanOverberghe noted that Connors "staggered and eventually backed up to the car again" to lean on the vehicle. *Id.* at 30. Officer

---

[1] *See* Ind. Code § 9-30-5-2.

VanOverberghe then administered three field sobriety tests to Connors: the horizontal gaze nystagmus test; the walk-and-turn test; and the one-legged stance test. *Id.* at 21-23. Connors failed each test and was taken into custody. *Id.* at 24. Connors was unable to complete a portable breath test and refused a chemical test, so Officer VanOverberghe applied for a warrant for a blood draw and transported Connors to the hospital to conduct the blood draw. *Id.* at 24-26. At the hospital, Connors also received medical treatment for his ribs, which were injured in the accident. *Id.* at 31, 66. Connors's blood was drawn at the hospital that same day at 9:15 p.m. and sent to the Indiana State Department of Toxicology, which later showed that Connors's blood alcohol content was 0.114. *Id.* at 35, 53-54; *State's Exs.* 1, 5.

[4] On August 19, 2019, the State charged Connors with operating a vehicle while intoxicated as a Class C misdemeanor. *Appellant's Conf. App. Vol. II* at 2. On November 7, 2019, as the bench trial began, the State moved to add a second count, operating a vehicle with a blood alcohol content of at least .08 as a Class C misdemeanor. *Tr. Vol. II* at 15-16. The trial court granted the State's motion over Connors's objection.[2] *Id*. at 16-17. Before the conclusion of the trial, Connors moved to dismiss the charges, arguing there was no evidence presented that he operated the vehicle while he was intoxicated. *Id.* at 58. The trial court denied Connors's motion to dismiss. *Id.* at 61. Connors then

---

[2] The trial court's chronological case summary shows this offense was charged under Ind. Code § 9-30-5-1. *Appellant's Conf. App. Vol. 2* at 27.

testified in his own defense, providing his account of the accident and timing of his alcohol consumption in relation to his operation of his vehicle:

> A.  A girl ran a stop sign, I tried to avoid her, she blasted the side of my car, spun it.  All my airbags deployed, I got knocked out.  I woke up, some girls or ladies ran up and asked if I was okay.  I remember pushing like a bullet-proof vest from the driver's window to get out of my vehicle.  And I was dazed and confused. And there was a party started up the driveway and I walked up to the driveway.  And I've been incarcerated ever since or I would go to that driveway and show you. And everybody --
>
> Q.  So when did you --
>
> A. (Continuing) -- was asking me for a ride out of there. And I was drinking with them.
>
> Q. Did you -- let me ask you a question.  When did you encounter the police, was it after that accident?
>
> A. Yeah, it was 20, 30 minutes later.  They showed up with the big van and I was still up in the driveway.  I was still at the end of the driveway by the house.  I knew everybody there.

*Id.* at 63-64.  Connors added that after the accident, he was "dazed, like dizzy[,]" but he "went up [the driveway] and they had vodka there, and I did an orange juice and vodka, and I slammed that, and then a Budweiser.  And I went back down, and then [Officer VanOverberghe] was there." *Id.* at 67. When asked if he disputed that he consumed alcohol, he replied "No.  I had alcohol.  I never said I didn't.  But it was after the girl hit me." *Id.*

In response to Connors's testimony concerning the timeline of his alcohol consumption, Officer VanOverberghe testified:

> Q. Okay. When you spoke with [Connors] did he at any point indicate he had been drinking alcohol after the accident?
>
> A. Yeah, he told me he had a couple drinks.
>
> Q. Did he indicate those drinks were after the accident?
>
> A. After the accident? No. I asked him if he had been drinking and he said, "Yes."
>
> Q. So at no point were you told that there were drinks -- that [Connors] drank alcohol after the accident?
>
> A. I was not told that, no.

*Id.* at 72.

At the conclusion of the trial, the trial court stated "I just find your testimony a little bit in -- incredible that you were feeling that dazed and confused and that your reaction to that is to slam down some alcohol. I just don't buy that." *Id.* at 79-80. The trial court found Connors guilty of Count I and Count II, entered a judgment of conviction on Count I alone, and sentenced Connors to sixty days executed with sixty days credit for time served. *Id.* at 82; *Appellant's Conf. App. Vol. II* at 29. Connors now appeals.

# Discussion and Decision

Connors contends that the evidence was insufficient to support his conviction for operating a vehicle while intoxicated. Connors maintains that Officer

VanOverberghe did not observe him driving a vehicle, that there is no evidence he consumed alcohol before the accident, and cites *Flanagan v. State*, 832 N.E.2d 1139 (Ind. Ct. App. 2005), in support of his position.[3] The State counters that the evidence presented was sufficient to support Connors's conviction.

[8] When we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id.* We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence need not overcome every reasonable hypothesis of innocence. *Id.* Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*.

[9] Indiana Code section 9-30-5-2(a) provides, in pertinent part, that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." To sustain a conviction under subsection (a), the State must prove beyond a reasonable doubt that (1) the accused; (2) operated; (3) a vehicle; (4) while; (5)

---

[3] To the extent that Connors challenges the sufficiency of the evidence for the trial court's finding him guilty of Count II, we note that no judgment of conviction was entered for Count II. Thus, we do not address the evidence sustaining Count II.

intoxicated. Indiana Code section 9-13-2-86, in part, defines "intoxicated" as "under the influence of . . . alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Impairment may be established through evidence of the following: "(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; and (6) slurred speech." *Wilkinson v. State*, 70 N.E.3d 392, 400 (Ind. Ct. App. 2017). "Circumstantial evidence is sufficient to prove that the defendant operated the vehicle while intoxicated." *Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct. App. 1995).

[10] Connors does not dispute that he consumed alcohol on the day of the accident or that he was driving the vehicle when the accident happened. Rather, he makes a temporal argument, and in support directs us to *Flanagan v. State*, 832 N.E.2d 1139 (Ind. Ct. App. 2005). In *Flanagan*, the defendant and his passenger were traveling from Allen County when their vehicle broke down. 832 N.E.2d at 1140. Sometime after 4:00 p.m. on that day, a sheriff's deputy observed a disabled vehicle by the side of the road with two men, later identified as the defendant and his passenger, standing near the rear of the vehicle. *Id.* The deputy, who was transporting a prisoner, was unable to stop for the disabled vehicle but returned later. *Id.* By this time, the defendant and his passenger had started to walk to a local convenience store, and the deputy, upon seeing them, offered them a ride. *Id.* Once inside the car, the deputy detected the odor of alcohol and observed that the defendant had red and

watery eyes and that his speech was slurred. *Id.* A certified blood test revealed that the defendant's blood alcohol content was .22., and he was convicted of OWI and public intoxication. *Id.* at 1140-41.

[11] The defendant appealed his OWI conviction, contending that, while he admitted to driving and to drinking, the State failed to prove the temporal element that he was driving while intoxicated. Noting that the deputy did not know how long the car had been disabled before he encountered it at 4:00 p.m., that there were empty beer cans on the floor of the car, and that there was no evidence as to whether the defendant consumed the alcohol before he drove or after the car broke down, our court reversed the conviction.

[12] This case is distinguishable from *Flanagan*. In *Flanagan,* the defendant's car was broken down beside the road when the police officer came upon it. There was no evidence, circumstantial or otherwise, that tended to indicate when the defendant drove the vehicle relative to the time he was discovered to be intoxicated. Here, in contrast, Officer VanOverberghe arrived at the scene of a reported accident at around 4:00 p.m. and "within 5, 10 minutes" after receiving the call, and Connors acknowledged that he was driving the vehicle at the time of the accident. *Tr. Vol. II* at 27, 63. While Officer VanOverberghe did not personally observe Connors driving the vehicle, when he arrived on the scene he found Connors leaning against his vehicle and could "smell the odor of alcohol" on Connors, although there was no evidence that alcohol containers were found in Connors's vehicle. *Id.* at 21, 31. Officer VanOverberghe also noted that when he asked Connors to step away from the vehicle Connors

"staggered[,]" "backed up to the car[,]" and "leaned on it." *Id.* at 30. Connors then failed each field sobriety test administered to him, admitted to consuming alcohol on the day of the accident, and, shortly after the accident, did not tell Officer VanOverberghe that his alcohol consumption occurred after the accident. *Id.* at 21-23, 64, 72. The relatively short time span that elapsed between the accident and the arrival of Officer VanOverberghe is unlike *Flanagan* where the responding officer had no sense of the length of time the vehicle had been disabled. Thus, the evidence in this case permits a reasonable trier of fact to infer that Connors's operation of a vehicle and his intoxicated condition both occurred within a relatively short time period. Connors's requests for us to credit his version of the events, in which he testified that his alcohol consumption occurred after the accident and before the arrival of Officer VanOverberghe to the scene of the accident, is a request to make a credibility determination and to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

[13] Based on the evidence and our standard of review, we conclude that sufficient evidence supported Connors's conviction.

[14] Affirmed.

Najam, J., and Brown, J., concur.